IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASHLEY DONNELLY, : | |
| : | |
| Plaintiff, : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 20-4189 |
| CAPITAL VISION SERVICES, LP, et al, : | |
| : | |
| Defendants. : | |
| : | |
| : | |

MEMORANDUM

**TUCKER, J.**                                                                                  August 2, 2021

      Before this Court are Motions to Dismiss from Defendants MyEyeDr. (ECF 13) and Capital Vision Services, LP (ECF 16), and Plaintiff's responses (ECFs 25 and 26). Because Plaintiff has properly served MyEyeDr. and properly pled claims relating to ADA eligibility and retaliation under both the ADA and Title VII, both motions are denied.

**I.      FACTUAL AND PROCEDURAL BACKGROUND[1]**

      Plaintiff was hired as an optometric technician at a MyEyeDr. (MED) practice in Newton, Pennsylvania in March 2019. Plaintiff told her managers, including the manager of the Newtown office, Linda Gilroy, that she was pregnant in late June or early July 2019. Afterwards, multiple other technicians left and were not replaced, leaving Donnelly the sole technician in the practice. As a result, Donnelly was left to perform the work of three technicians. Furthermore, management began to treat her in a more hostile manner due to her pregnancy and anticipated maternity leave.

---

[1] This section primarily draws from Plaintiff's Response to Capital Vision Services' Motion to Dismiss (ECF 25).

Donnelly alleges one of the doctors, David Duffy, began to treat her rudely, excessively criticized and scrutinized her work, and exhibited frustration with both her inability to do the work of all three technicians, and her impending maternity leave.

In August 2019, a new technician with less training than Donnelly was hired; Plaintiff had to train the new employee for several months. In November 2019, Donnelly submitted her request for six weeks of maternity leave to HR, intending to work until her due date in early February 2020.

HR told Donnelly she was not eligible for Family and Medical Leave Act (FMLA) leave until March 2020, after a full year of employment, but the first several weeks of the maternity leave would be designated as Americans with Disabilities Act (ADA) protected leave. She began leave on her original timetable and gave birth on February 10, 2020. The leave would have her return to work on March 23, 2020.

Due to the COVID-19 pandemic, the MED practice was closed and employees were furloughed. Donnelly told her managers she was prepared to return to work on March 23, but due to the two-week delay in reopening, employees were offered two weeks' pay as compensation. Donnelly alleges she was initially excluded from the compensation until she raised the issue of disparate treatment and threatened to escalate to legal action.

As employees were called back to the practice, Donnelly was never recalled, and instead was informed her job was eliminated due to restructuring in letter dated June 23, 2020.

Donnelly alleges this was a pretextual reason, as (1) someone in the same role was retained despite less ability to do the job, (2) her role was advertised around the time of the termination, and (3) the termination came shortly after she requested and used ADA and FMLA leave.

Donnelly filed the first iteration of this complaint on August 26, 2020. Capital Vision Services and MED filed their Motions to Dismiss on December 4, 2020.[2] These motions only address the second and third counts of the complaint, which allege discrimination and retaliation under Title VII/The Pregnancy Discrimination Act, and disability discrimination and retaliation under the ADA, respectively.[3]

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(5), a district court may dismiss a suit for "insufficient service of process." Under Rule 12(b)(4), a court can also dismiss for "insufficient process". In evaluating a 12(b)(4) motion, the court considers the adequacy of the contents of the documents served. *McCaffrey v. Windsor at Windermere Ltd. P'ship*, No. CV 17-460, 2017 WL 5483773, at *4 (E.D. Pa. Nov. 15, 2017). Under either rule, the plaintiff has the burden of establishing proper service per Federal Rule of Civil Procedure 4, which can be proved by a preponderance of the evidence. *Kornea v. J.S.D Mgmt., Inc.*, 366 F. Supp. 3d 660, 667 (E.D. Pa. 2019); *Talley v. Supreme Ct. of Pennsylvania*, No. 3:17-CV-1632, 2019 WL 5446052, at *5 (M.D. Pa. May 23, 2019).

Under Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint when factual allegations are not sufficient to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). A court must accept well-pleaded facts as true but disregard legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009). A court must also

---

[2] Capital Vision Services, LP manages independently owned optometry practices operating under the name MyEyeDr. Am. Compl. ¶ 7.
[3] The first count of the Amended Complaint, which is not addressed by the two motions, alleges interference and retaliation under the FMLA.

3

determine whether facts alleged are sufficient to show that the plaintiff has a "plausible claim for relief." *Id* at 211. Determining whether a complaint has raised a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

## III. DISCUSSION

This Court will first address the MyEyeDr. Motion to Dismiss, before addressing the more substantive arguments put forth by Capital Vision Services as to Plaintiff's ADA and Title VII-derived claims. Both motions are denied.

### A. MyEyeDr. Was Properly Served

MyEyeDr. (MED) argues it should be dismissed from this suit because Plaintiff did not properly serve the entity under Federal Rules of Civil Procedure 12(b)(4) and (b)(5). The basis for this claim is "the complaint and summons delivered to the MEDO-PA [MyEyeDr. Optometry of Pennsylvania] location only names 'MyEyeDr.' MEDO-PA does not know, and does not admit, that it is the 'MyEyeDr.' on whom Plaintiff attempted to make service." MED Mot. Dismiss 2 (ECF 14). This deeply absurd attempt to dismiss relies on a ticky-tack, hyper-technical reading of the service requirements, and as such is rejected by the Court.

Plaintiff upon filing her original complaint mailed out the document and waivers to Defendants. After the non-return of these waivers, Plaintiff served the complaint on Defendant MED via process server on October 14, 2020. Pl.'s Opp. MED Mot. Dismiss, Ex. A (ECF 26-2). On October 28, 2020, counsel for MED and Capital Vision Services emailed Plaintiff's counsel to seek a 30 day extension of time to answer or make a responsive pleading. *Id.* at Ex. B. In neither this communication nor in the approximately one month between then and the December

4, 2020 filing of the MED Motion to Dismiss, did Defendant mention any deficiency with Plaintiff's service. Pl.'s Br. Opp. MED Mot. Dismiss 3 (ECF 26).

Under Federal Rule of Civil Procedure 4, a corporation can be served by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent or any other [authorized] agent." Fed. R. Civ. P. 4(h)(1)(B). Plaintiff used a process server to provide the summons and complaint to Heather Smith, the store manager of MED. *See* Pl.'s Opp. MED Mot. Dismiss, Ex. A. Contrary to MED's protestations, Smith had apparent authority as a proper person upon whom service could be delivered. Under Pennsylvania law, an individual has apparent authority where a principal leads people who interact with the alleged agent "to believe that the principal has granted the agent the authority he or she purports to exercise." *Amco Ukrservice & Prompriladamco v. Am. Meter Co.*, 312 F. Supp. 2d 681, 696 (E.D. Pa. 2004). Smith appears to the public and employees of the optometry practice as the "store manager" of MyEyeDr. Pl.'s Opp. MED Mot. Dismiss, Ex. C (showing Smith's LinkedIn profile listing her at that position from Feb. 2020 onwards). Smith does not state that she is actually an employee of Defendant Capital Vision Services, and based on her presentation to the public, she would fit in the "managing or general agent" portion of Rule 4(h).

Additionally, MED's argument that it should be dismissed because "MyEyeDr." is a trade name distinct from its legal name of "MyEyeDr. Optometry of Pennsylvania" is spurious. Plaintiff's documentation from her job, from the offer of employment to her pay stubs and termination letter, all state Donnelly's employer as "MyEyeDr." and not "MyEyeDr. Optometry of Pennsylvania". *See* Pl.'s Opp. MED Mot. Dismiss, Ex. D (attaching each of these documents). As Plaintiff correctly notes, the case MED cites to claim the incorrect caption was "inexcusable neglect" specifically differentiates its situation—post judgment—from the early stages of a civil

action. *See Flynn v. Best Buy Auto Sales*, 218 F.R.D. 94, 96 (E.D. Pa. 2003) ("Significantly, courts have examined proposed amendments pursuant to Rule 15(a) with greater scrutiny in the *post-judgment* context."(emphasis in original)). Defendant MED's motion is denied and Plaintiff may amend the caption to identify the correct MyEyeDr. entity.

### B. A Proper Title VII/ADA Retaliation Claim was Made

Defendant Capital Vision Services seeks the dismissal of Count II and Count III of Plaintiff's complaint, which allege retaliation under Title VII of the Civil Rights Act and discrimination in violation of the Americans with Disabilities Act (ADA), respectively. This Court will first consider whether Plaintiff has appropriately alleged she fell under the protection of the ADA. Then, it will address whether she properly pled claims of retaliation under both the ADA and Title VII for taking pregnancy leave. Because Plaintiff has done both sufficiently for Rule 12 purposes, Capital Vision's Motion will be denied.

As a guiding point to this analysis, we look to the principle recently reaffirmed by the Third Circuit: when evaluating complaints in the employment discrimination context, a plaintiff must only allege enough to "raise a reasonable expectation that discovery will reveal evidence of [each] element." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009)) (ruling an "imperfect" inference, such as a statement that a replacement employee was "significantly younger" in an age discrimination suit is "enough to get to discovery").

1. *Donnelly Has Properly Alleged She Was Regarded by Her Employer as Disabled Under the ADA Due to Pregnancy*

Capital Vision Services contends Plaintiff's ADA claim should be dismissed because Donnelly failed to allege her pregnancy was regarded by her employer as a disability, or that her

6

pregnancy even constituted a disability under the ADA. However, because she has demonstrated the former and presented enough evidence of the latter at this stage of litigation, the ADA claim remains.

To establish a *prima facie* case of discrimination under the ADA, a plaintiff needs to allege (1) they are disabled within the meaning of the ADA, (2) otherwise qualified to perform the essential functions of the job, with or without reasonable employer accommodations, and (3) they suffered an adverse employment consequence as a result of discrimination. *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010). Included within the ADA's definition of "disability" is "being regarded as having such an impairment". 42 U.S.C. § 12102(1)(c). To meet the "regarded as" definition, an individual must establish that they have been subjected to an adverse employment outcome "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity," above the level of a "transitory and minor" impairment expected to last under 6 months. 42 U.S.C. § 12102(3).

As a result of the ADA Amendments Act of 2008 (ADAAA), Plaintiff does not need to prove Capital Vision believed she was substantially limited in major life activity, as Defendant claims. *Showers v. Endoscopy Ctr. of Cent. Pennsylvania, LLC*, 58 F. Supp. 3d 446, 462 (M.D. Pa. 2014) ("whether the employer believed that any impairment substantially limited the plaintiff's major life activities is no longer dispositive under the ADA."). Instead, the plaintiff needs to prove the employer "misinterpreted information about [the employee's] limitations to conclude that he was unable to perform a 'wide range or class of jobs.'" *Hannis-Miskar v. N. Schuylkill Sch. Dist.*, No. 3:16CV142, 2016 WL 3965209, at *3 (M.D. Pa. July 22, 2016) (citing *Keyes v. Catholic Charities of the Archdiocese of Phila.*, 415 Fed. Appx. 405, 410 (3d

Cir. 2011))

Plaintiff has alleged enough evidence to raise the possibility her employer regarded her as disabled under the amended definition of the ADA. The portion of her pregnancy leave prior to FMLA eligibility was designated as an ADA accommodation by HR. Am. Compl. ¶ 28. Furthermore, while the status of pregnancy generically under the ADA is disputed under current precedent, Plaintiff has pled facts making it plausible her *specific* pregnancy would fall within the law.

2. *Even if Pregnancy Itself is Not an ADA-Covered Disability, Pregnancy Complications Are*

Plaintiff has alleged enough facts to raise an inference her own pregnancy would fall under the ADA because she could have had complications, even if the status of pregnancies generically under the act is disputed. As Defendant correctly notes, especially under pre-ADAAA precedent, pregnancy alone is generally not considered a disability. *See, e.g., Brennan v. Nat'l Tel. Directory Corp.*, 850 F. Supp. 331, 344 (E.D. Pa. 1994) (noting "temporary, non-chronic impairments of short duration" such as pregnancy are not disabilities under the EEOC guidance of the time). However, the ADAAA has shifted the doctrinal environment on this issue. A key element of Congress' intent in drafting the law was to correct the prevailing judicial interpretation of what constituted impairment which "substantially limits" major life activities under § 12102(1)(A). Congress believed the interpretation had become too narrow and "created an inappropriately high level of limitation necessary to obtain coverage under the ADA." *See* Pub.L. 110–325, 122 Stat. 3553, § 2(b)(5). As a result, post ADAAA EEOC guidance states the "substantially limits" language "shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA . . . [as it] is not

8

meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). Furthermore, such an assessment of an impairment's limiting impact "requires an individualized assessment". *Id.* at § 1630.2(j)(1)(iv). As a result, "courts interpreting the Act in light of the 2008 amendments have found that *complications arising out of pregnancy* can constitute disability sufficient to invoke the ADA". *Oliver v. Scranton Materials, Inc.*, No. 3:14-CV-00549, 2015 WL 1003981, at *7 (M.D. Pa. Mar. 5, 2015) (emphasis in original). Whether such complications qualify for protection under the law is a question of fact. *Id.*

Furthermore, Plaintiff's termination after giving birth does not categorically bar an ADA claim as to her pregnancy, as Defendant contends. In making this argument, Capital Vision Services relies on *Parrotta v. PECO Energy Company*, where the utility terminated an employee with a foot injury after he tested positive for cannabis in a drug screening. 363 F. Supp. 3d 577, 591 (E.D. Pa. 2019). However, in that case, the plaintiff was able to return to work after the disability, while Donnelly was terminated by Capital Vision Services without returning to her position. An interpretation of the law suggested by Defendant would allow for employers to avoid liability under the ADA by simply firing individuals the day after they "recovered" from their disability.

Furthermore, the cases *Parrotta* cited for the statement that disability is measured "at the time the adverse action occurred" actually focused on whether the *qualification* prong of "qualified individual with a disability" under the ADA applied, when that aspect of the *prima facie* analysis is contested. *See Mills v. Temple Univ.*, 869 F. Supp. 2d 609, 621 (E.D. Pa. 2012) ("To begin, the determination of whether a person was a qualified individual with a disability for the purposes of an ADA claim is not made from the time the lawsuit was filed or any other later time period, but from the point at which the alleged discriminatory decision was made.")

9

(internal quotes omitted, citing *Bowers v. NCAA*, 475 F.3d 524, 535-36 (3d Cir. 2007)). *Bowers* in its discussion also cited a case actually about contestation of the "qualified" prong, *Turner v. Hershey Chocolate USA*. 440 F.3d 604, 611 (3d Cir. 2006) ("Here, Hershey does not contest that Turner has a disability. . . . Therefore, our analysis focuses on whether Turner is a 'qualified individual.'"). For these reasons, Plaintiff's termination post-birth does not foreclose an ADA-based claim.

Plaintiff should be allowed to develop a factual record around her pregnancy falling within ADA disability protection for two reasons. First, sufficient facts have already been pled suggesting Capital Vision Services regarded Plaintiff as disabled. *See supra* Section III.B.1. Second, pregnancy complications are considered a disability under the ADA, and Plaintiff gave birth under the specific circumstances of the early stages of the COVID-19 pandemic, which led to fears around accessing medical care during pregnancy more broadly that could have led to health problems surrounding the pregnancy. *See generally* Rosemary Townsend, et al. *Global changes in maternity care provision during the COVID-19 pandemic: A systematic review and meta-analysis*, The Lancet - EClinicalMedicine, June 19, 2021, available at https://doi.org/10.1016/j.eclinm.2021.100947 ("Reduced maternity healthcare-seeking and healthcare provision during the COVID-19 pandemic has been global, and must be considered as potentially contributing to worsening of pregnancy outcomes observed during the pandemic."). If discovery proceeds and there is insufficient evidence Plaintiff's pregnancy met the ADA bar for disability status, Defendant may revisit this question as a Rule 56 motion.

   3. *FMLA Maternity Leave May Constitute Title VII Protected Activity*

Plaintiff has also properly pled the elements of a Title VII retaliation claim relating to her dismissal for taking FMLA leave. Title VII makes it unlawful for an employer to retaliate against

an employee for "oppos[ing] any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To make a *prima facie* claim for retaliation under Title VII, a plaintiff must demonstrate (1) they engaged in activity protected by Title VII, (2) the employer took an adverse employment action against them, and (3) there was a causal connection between their engagement in the protected activity and the adverse employment action. *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006).

Defendant argues Plaintiff's claim fails because a request for maternity leave does not constitute protected activity under Title VII. In making this claim, Defendant cites *McCormick v. Allegheny Valley School*, which ruled a request for maternity leave "is neither participation in a Title VII proceeding nor an act in opposition of discrimination." *McCormick v. Allegheny Valley Sch.*, No. CIV. A. 06-3332, 2008 WL 355617, at *17 (E.D. Pa. Feb. 6, 2008). Plaintiff counters that this decision is not binding precedent. Plaintiff also notes the court in *McCormick* itself did not cite any precedent for that interpretation of Title VII. Pl.'s Opp'n Mot. Dismiss 8. Indeed, this characterization of the status of a maternity leave request under Title VII is disputed. In *Erdman v. Nationwide Insurance Co.*, a district court on remand from the Third Circuit declined to re-evaluate its finding that an FMLA leave request could constitute activity protected under the PHRA. No. 1:05-CV-0944, 2010 WL 235112, at *6 (M.D. Pa. Jan. 15, 2010). The court based this view on federal courts in the Third Circuit interpreting its federal counterpart, Title VII, to protect requests for FMLA leave,[4] stating, "whether invoking one's right to FMLA leave

---

[4] The PHRA and Title VII are generally construed in a similar manner. *See, e.g., Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) ("While the Pennsylvania courts are not bound in their interpretations of Pennsylvania law by federal interpretations of parallel provisions in Title VII . . . its courts nevertheless generally interpret the PHRA in accord with its federal counterparts"); *Toth v. California Univ. of Pennsylvania*, 844 F. Supp. 2d 611, 626 (W.D. Pa.

11

is an activity protected by the PHRA has not been settled by any authoritative source of law, and the court's prediction that the Pennsylvania Supreme Court would find it to be a protected activity remains viable." *Id.*

However, the Court does not need to resolve this doctrinal thicket to allow Plaintiff to continue to pursue this claim. As Plaintiff notes in her brief, she has already pled other protected activity under Title VII to establish a retaliation claim; she expressed concerns to her employer about her exclusion from the two weeks of paid compensation given to other employees after initial pandemic closures, and specifically invoked her status of FMLA leave in raising these concerns. *See* Pl.'s Am. Compl. ¶ 33 ("after expressing numerous concerns, including that she should not have been treated differently just because she was on FMLA and threatening to escalate her discriminatory non-payment to a legal issue, she was provided with the two weeks of paid compensation"). This brings Plaintiff to the point of having pled a "plausible" claim that can get to discovery. The FMLA/Title VII claim remains.

    4.  *Donnelly Has Properly Pled Retaliation Under the ADA*

Plaintiff's claim of retaliation under the ADA survives for similar reasons. The ADA bars employers from retaliating against employees who avail themselves of the Act's benefits. 42 U.S.C. § 12203. Owing to the similarity of the ADA's retaliation provision to Title VII's, it is analyzed under the same framework. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997). Again, the *prima facie* case is established by showing (1) protected employee activity, (2) adverse employer action either after or contemporaneous with the protected activity, and (3) a

---

2012) ("Although the PHRA is a statute of independent force under Pennsylvania law, its proscriptions have generally been construed to be coextensive with their federal counterparts.").

Plaintiff intends to bring forth claims under the PHRA, but at the time of her Amended Complaint was waiting until the exhaustion of state-level administrative remedies before pleading them in this action. Am. Compl. at p. 2 n.2.

causal connection between the protected activity and the adverse action. *Id.* Making even informal, verbal complaints to management about acts violating anti-discrimination statutes can constitute protected activity. *See e.g. Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 288 (3d Cir. 2001). As Plaintiff has appropriately pled that she complained of discriminatory activity (*see supra* Section III.B.3), and has pled enough information to plausibly make a claim of ADA status to begin with, Plaintiff has also appropriately pled the elements of a retaliation claim under the ADA. As such, the ADA retaliation count remains.

## IV. CONCLUSION

For the foregoing reasons, the Motions to Dismiss are **DENIED**.

An appropriate order follows.